Good morning. The first matters plural listed for argument this morning are Prusky v. Reliastar and another Prusky v. Reliastar which we have consolidated for purposes of argument and while the minutes before me are indicating 15 minutes per side, I think the panel had previously agreed that given the combination of the two matters and the multiplicity of issues present that each side would be afforded up to 30 minutes to argue. So we'll proceed accordingly. Good morning, Your Honors. May it please the Court, Bruce Merensky on behalf of Appellants Paul Prusky and Stephen Preston. In light of Your Honor's generous addition of 15 minutes, I'd like to reserve 5 minutes for rebuttal with the Court's permissions. It's granted. I didn't mean to imply that you have to use it all. There's no requirement of that, but we'll indulge it certainly. I'll do my best to be quick and efficient, Your Honor. I'd like to start then with the damages appeal, the first of the two appeals, and then move on to the race judicata and collateral estoppel appeal. In the damages appeal, as the Court, I'm sure, is well aware, the plaintiffs, the Pruskys, bargained for the right to make daily investment decisions. That's a core right that they bargained for in the contract, to make determinations on a day-to-day basis, every 24 hours, where they would invest their money and which stock and bond funds or if at all in the stock and bond markets, rather than making long-term decisions for a month or two months or three months at a time. Rely Star breached that part of the contract. There's no dispute about that. They did not appeal from that holding of the District Court. And therefore, plaintiffs were prevented from making those day-to-day determinations. In the damages case, the District Court then held that the plaintiffs failed to mitigate the damages because they did not do exactly what they had bargained for the right not to have to do, that is to make long-term investment decisions. Mr. Merenstein, speaking only for myself, in the damages case, the issue that most interests me and one where there is some difference in the briefs between counsel's positions, as I understand them to be articulated, is the standard of review that applies here. And I'm curious to hear from both sides on that and to hear from you as to what standard of review we should apply to the issue of mitigation that was present in the damages case. I think it is de novo, Your Honor. I think this Court has already decided that. And we cite the cases in our brief. The leading one is the Fiat Motors case where the Court said this Court's review of a District Court ruling that a plaintiff was or was not reasonable in mitigating the damages is de novo. And I think that that makes sense because this Court has consistently held that it gives de novo review to the application of the law to the facts. I'm not so sure, and that's what I'm getting at. Certainly, the existence of any legal duty is a legal principle and therefore would be subject to plenary review. Would you agree with that? We haven't contested the contention that there's a legal duty to mitigate. But I think that the real dispute is over the application of that law of mitigation, the Pennsylvania law of mitigation, once we accept that there's a duty to the facts. All right. The application then of what? You agree that the existence of the principle, that is, whether or not there's such a duty is a legal question, it would be subject to plenary review. So once the Court actually applies it and has to make, as this Court did, findings of fact, why aren't those findings of fact subject not to plenary review, but rather the much more forgiving standard of clearly erroneous? I think the findings of fact are subject to clearly erroneous review. We don't dispute that. The point here is that the core facts that form the circumstances which all the cases say the Court needs to look at in determining whether or not there was reasonable steps taken to mitigate are not disputed. The core facts that the Court relied on are, again, they're undisputed. The fact that the plaintiffs for 30 years or more had only one method of investigating. But the core of the Court's decision-making here on mitigation was reasonableness, wasn't it? And why isn't that a factual determination subject to clearly erroneous review? Well, I'm not sure how else I can put it, Your Honor, other than I believe that the reasonableness determination is a classic application of the law of mitigation, the law that says plaintiffs need not take undue risks, the law that says plaintiffs need not take steps that could be possible. What if this hadn't been a trial by judge? What if it hadn't been a bench trial and it had gone before a jury? What's the jury going to be asked to do? What kind of decision-making is going to happen then with respect to reasonableness and how would we review those jury findings? Well, I think that where this would translate to a jury case would be in the instructions to the jury. And I think that given the analysis, the flawed legal analysis of the District Court in applying Pennsylvania law of mitigation, I think that if you translated this to a jury trial, there would have been flawed jury instructions telling the jury how to undertake its factual findings regarding mitigation. And that is the application of the law to the facts. Let me cut this to the chase. I, of course, have read the Scully case and Schultz and the other cases cited by you and your adversary, and I don't see how you can argue effectively that a finding of mitigation is reviewed by us other than as a question of fact, whether substantial evidence, reasonableness of the determination by the District Court. Why don't you argue it as best you can? I think you have a substantial ground to argue it on, that the determination by the District Court that the third proposal by the expert, defendant's expert, was, as a matter of law, ridiculous. As the District Court found the first two proposals of mitigation suggested by the expert to be wholly unreasonable. Well, I thank you, Judge Collins. That's essentially where I was going. I mean, I don't think... I think we should explore the reasonableness of whether or not there was... There's no doubt that they acknowledge that you acknowledge you have to mitigate. They say you have to mitigate, of course, and it's their burden to prove what that mitigation should be. You don't have to prove what you should have mitigated. So, I think your best argument to us at this point, and I suggest, I mean, this is just where I'm coming from, is the District Court rejected the first two alternatives that the defendant suggested, and of course, I agree with the District Court in that. And the third is the one the District Court bought. I think your argument showing that that was an incorrect decision, that that type of... legally was incorrect, would make a lot of sense. Well, and I agree, and obviously, that's a point that we make in our brief. It is unreasonable. It is clear... Why is that third suggestion that you look at what your client did over a period of three years and then say, this is what he should have done, kept X amount of CDs and the rest of the same stock for that entire three-year period? Well, I think for a number of reasons. For one, it simply was impossible for them to do that at the time of the breach, and the law is clear that you have to look at what could you do to mitigate at the time of the breach. The analysis required him to look at the end of the breach period, the end of the 39 months, and to look back and basically to crush that. You mitigate by what's reasonable at the time the breach occurred, and for you to determine what to do without having three years of experience wouldn't have been there. That's your argument? Absolutely. Without a crystal ball, there's no way to determine what decisions they would make on a day-to-day basis. The data he used was the decisions that the plaintiffs made every single day. Excuse me. Based on what you just said, is your argument then that there was no way that a trial court could make such a determination looking back then? That can't be the answer, is it? Well, I think what the district court— The district court has to fix on something. It has to come up with some measure of damages, and once it has been determined that mitigation is applicable here, there has to be some course adopted from the record. Well, let me give an example, Your Honor. Although I agree with Judge Cowell and with the district court that there was simply no way that the first mitigation proposal, which was the main one that ReliStar put forth, was in any way reasonable. The idea of just keeping the money where it is, that clearly would have been plausible, because it looks at the time of the breach, certainly plaintiffs could have just said, Okay, we're not going to do anything. We're going to leave our money here. That would have been incredibly unreasonable for anybody, let alone for these plaintiffs, but at least it would have been feasible. So yes, 39 months later, you could look back and say that's something they could have done, but you couldn't say that what they should have done 39 months ago was know what they were going to decide to do every day. You know, 750, 800 different business days over the next 39 months, and then work backwards and say, Based on these decisions we're going to make over the next 39 months, this is where we should invest the money. But in addition to that, it would have required plaintiffs to undertake an investment strategy that, as I said, they specifically bargained not to have to do, and which they've never in their lives done. I mean, it would have required them to, as the district has said, change their spots. Stop right there. Do you really think that a finder of fact, any finder of fact, looking at the proskies and attempting to determine what was reasonable for the proskies to have done, would factor into its calculus that the proskies, as sophisticated as they were, would not use anything other than the strategy which they had sought to use and had used for a time here? That is to say that they had no expertise at all in equities or in balanced funds or anything else? Yes. Do you think a fact finder would find that to be a reasonable course or reasonable explanation on the proskies' part as to why they didn't pursue it? Absolutely, Your Honor. I think given the undisputed evidence that they are not long-term investors and that they have no expertise in determining where the market can go, they've gone for, as the testimony was undisputed, a trial for 30 years without having a year of losing money, even when the market has been down, even when the market is down 10 percent, even when the market is down for two or three years at a time. And the reason is because they have a very conservative investment strategy. When they are sure where the market is going to be for the next 24 hours and they think they know which sectors are going to go up the most, that's where they put their money. When they're not sure, they put their money in money market. Reliance Store's experts' own analysis of where they wanted to put their money over that 39-month breach period showed that almost half the time their money was in the money market. That's their investment philosophy. Very conservative. When they're sure where it's going to happen in 24 hours, they invest in the stock market. When they're not, they put it in the money market. That's exactly what they did during the breach period. More directly, is it your argument, as I read your brief, is it your argument that it's not your obligation, it's the defendant's obligation to suggest what the mitigation should be? Well, they have to prove the mitigation. They have to prove what you should have done to mitigate that admitted the breach occurred. They have the burden to show what the mitigation should have been. They suggested three alternatives. The first alternative made no sense at all. No investor puts his money into anything and holds it and doesn't touch it. The second one was somewhat similar, 44%, a strategy of holding, which no investor does. The only thing before us, really, is the third suggested alternative by the expert. And that alternative didn't suggest anything that the proceeds could have done on the day one of the breach. It suggested something that they could only have done after three years of the breach. Exactly. So, in effect, you have an obligation to mitigate. See, I believe that there is a mitigation requirement here, but it's not your obligation to suggest what it be. The defendant came up with three suggestions. And if we determine, well, the first two are out. If we determine that the third one is also unreasonable because it wasn't based on anything that they should have done on the day of the breach, where do we go from there? Well, what we're asking for is to remand and to have the district court award plaintiffs all of the damages that the district court found they suffered. My question is they would not be entitled to a remand and a second bite at the apple? No. They had their shot, and that's it. Absolutely. It was a full trial on damages, and they had their shot. And as you said, they put forward these three. And, again, I would emphasize that the main one they put forward in their briefs, in their expert report at the trial, was the first one. I agree with you. It makes absolutely no sense. Well, that's what makes the least sense, I think. Why should that be the course if there were a remand, though, since you agree that there is a duty to mitigate, simply that the evidence offered by Reliostar did not provide an adequate means for the district court to assess the mitigation in its entirety, the mitigation amount in its entirety, and that the district court, as a consequence, selected a methodology of calculating the measure of mitigation and ultimately the measure of damages based on flawed assumptions? Why wouldn't, on remand, we direct the district court and the parties simply to proceed further, making a new or additional record? Well, because I think the key here is that Reliostar bore the burden of proof, and it didn't meet it. I mean, under our view, and if the court agrees that the third analysis was not a reasonable means of mitigation, it failed to meet its burden of proving that the plaintiffs had another reasonable mitigation steps it could have taken that it didn't take. And at that point, I'm not sure why, if they haven't met their burden of proof, they get to say, okay, well, here's a fourth and fifth suggestion, or here's a sixth and seventh suggestion. I think they've given up. I mean, at that point, there's been a trial. It's not as if the court granted us summary judgment and said that, therefore, they didn't get their bite of the apple. I mean, they have. There's been a trial. If they didn't meet their burden of proof, they lose on that issue. It certainly would be different if the burden was on plaintiffs. But here, the burden is unquestionably on defendants, as they agree. Could I, if we've explored this first issue of suffix, could we turn to the question of race, She's about to ask the same thing, Your Honor. And back to first year of law school, where we're at at this point. The complaint that you filed originally, I read it, of course, you sought declaratory and injunctive relief, together with contractual relief as well. That's correct. If I'm reading it correctly, you sought a determination as to what their obligation was or were, correct? And declaratory in futuro, correct? Yes. Correct me if I'm wrong, please. Well, I think that we sought the broadest relief possible, as complainants, as litigants usually do when they file a complaint. What we were entitled to was only such relief as could be framed by the presently existing facts. That's clearly the law. Well, yeah, but that's not, it seems to me you were seeking declaratory relief, or it could be read, as to what your obligations and rights were under the initial agreement and the collateral agreement. The addendum to the agreement? Yes. Well, we were, based on the presently existing fact of when ISTAR had stopped allowing the plaintiffs to trade on a daily basis. So we were seeking the court to declare that we were allowed to do that under the contract. Right, but weren't you also, would it be incorrect for the court to read that complaint as seeking what those two agreements spelled out in the event that the funds no longer permitted the trading, the daily trading? Well, I'm not sure if it would be fair or unfair for the court to read it that way, but if the court did read it that way, it doesn't change the fact that the court has no authority to grant such relief. We couldn't simply file a complaint and say, look, they've done this one breach based on the allegedly heightened regulatory scrutiny, that they say that there's some crackdown on other mutual fund trading practices and some speeches by securities regulators, so they're not allowing us to trade we think we're allowed to. We couldn't use that as a hook to get the court to interpret the entire agreement and say, if the SEC passes a new regulation, tell us whether or not that affects our agreement. If a mutual fund does X, Y, and Z, we have no right to get to such relief from the district court and no authority. Not as to future facts, which occur after the filing of the complaint, but didn't the complaint in its form seek a declaration of your rights and obligations under the two agreements? The first complaint, the complaint in the first stage. Well, it actually sought a declaration of our rights. Now, at that time, the court found that the funds did not prohibit the trading, which they said they don't want to effectuate anymore. Correct. At a later time, when the funds said, look, we're not going to permit this anymore, there were facts which were in dispute, which were not in dispute at the time that you filed the original complaint. Correct. In fact, they arose after summary judgment had been granted in the first case. Not just after we filed the complaint, but almost more than three years later, after the court had actually disposed of the liability issues in the first case. But nevertheless, does that subtract from the efficacy of the finding of the court in the first suit that under declaratory and injunctive relief, you were entitled, a factual finding, that you were not entitled to have relief if the funds or the law prohibited that type of trading? I think absolutely it detracts from it. The fact that the fact was not existing at the time the court rendered its opinion and issued those factual findings in January 2007, the fact that the mutual funds had not at that time, as the court repeatedly found and noted, had not said anything to Elias Starr about the plaintiff's trading, I think that renders the court's comments on that, whether in its opinion or in its order, essentially a nullity. They can't be essential to the judgment if they're not based on presently existing facts. Yeah, but we see an injunctive relief all the time. A court issues an injunction concerning a certain matter, and in a later time on the enforcement of the injunction, facts are developed which were not available at the time the injunctive declaratory relief was originally ordered. And that doesn't subtract from the fact that the injunctive declaratory relief dominates what should occur once the after occurring facts are ferreted out. And I don't disagree with that, Your Honor. I think the difference is that for the court to have power to do that in the first case, in issuing the injunction in your hypothetical, for it to have power to do that, it must be implicated by the presently existing facts. The Supreme Court's decision in the Etna case, which is almost 70 years old but is still repeatedly cited by this court and by the Supreme Court, makes that unequivocal. That in order for that injunction to have force, in order for the district court to have the authority to issue that injunction or a declaratory judgment, it has to be based on presently existing facts. But isn't that the very nature of declaratory relief, where you have a complaint where you seek to have adjudicated what facts, what your rights are under a certain contract or whatever, those facts not yet being in existence? No, I disagree, Your Honor. And that's what the Etna case was about. And in fact, for understandable reasons, that case and later cases sometimes included a challenge to the Federal Declaratory Judgment Act on the ground that if it was exactly as Your Honor said, just declare our rights, interpret this contract for us because down the road something might happen and we want to know whether we can do this or we can do that. The court has said that would be unconstitutional. It would be advisory opinion. So there has to be in an Etna involved a disability, whether somebody was disabled. And the party defending the declaratory judgment said, you can't enter a declaratory judgment because that could change. I mean, they could be not disabled. And the court said, well, if they're disabled today, that's a presently existing fact. You can issue a declaratory judgment about it. If a year from now they're not, just as in Your Honor's hypothetical, then you come back and you ask for either a modification or a new declaratory judgment or a new injunction. But even in the context of a declaratory judgment, it has to be based on presently existing facts. Parties cannot, in federal court, go into court and ask the court to say, construe our contract. We're concerned that a month from now, a year from now, an issue may come up under Section 5A, you know, 3. Well, can't they go into court and ask for construction of a contract when there's a presently existing dispute and one side says black and the other side says white or whatever it is? And the court then declares what the rights are under the contract, even though an actual breach has not yet occurred. But the parties want to know what are the rights before they breach or don't breach. Only if the presently existing fact is implicated. Only if the court says, you know, if there's something in the contract that says if one party does this, the other party doesn't have to honor the contract. So the first party does X. It does that thing. The second party comes in and says, look, they've done that. You know, we want a breach, but we don't want to have a breach of contract action against us. That's different in this case. Isn't that implicated here where you claim, look, whatever the law is, whatever the funds say, we're not going to accept these day trades. They are required to somehow make good on the contract which they had with you to effectuate this type of thing. Where they said, look, we don't have to effectuate anything when the funds give us a hard time or certainly when it's illegal or the funds will not allow this type of trading anymore. I think it doesn't change in that situation. I think for the reasons that I think are implicit in your Honor's question, that is the parties are busy arguing about speculative, hypothetical future facts. We say if such and such happens, we still have to comply. I can stop right there, Mr. Bernstein. It isn't the basic issue in both of these cases. The scope of Relia Star's duty under the contract to effectuate the Pruski's trade request. That's what the district court, as I recall, referred to as the nub of the controversy, which is a good old Lincoln-esque term. Well, but I think it's important that not in the first case. In the first case, the court said, when it began its legal analysis, it said essentially it had a very narrow issue before it. Whether or not heightened regulatory scrutiny excused Relia Star's breach of the contract. In the second case, it said, oh, I was doing something much broader. I was interpreting the scope of Relia Star's obligations. So first of all, I think the court changed the history of the first case. But even more importantly, and I don't mean to repeat, but the court had no authority to just issue some broad opinion on the scope of Relia Star's obligations. So why didn't you appeal? You could have appealed. I know you've distinguished our decision in the John Alexander Cosmetics case as applying federal law, whereas this involves state law. But we made clear in that case that if there's a ruling where you get a half victory and a half defeat, it's incumbent upon you to appeal. You could have appealed that aspect of the district court's decision. Respectfully, Your Honor, I don't agree. I don't think we could have appealed. I think if we had appealed that, this court would not have addressed the issue because it wasn't implicated by the existing facts. We prevailed in the case and got all the relief to which we were entitled, which was an order requiring them to comply with the contract at that time. The only thing that was in there that we didn't agree with was something about what would happen if some hypothetical event happened in the future. I think the John Alexander case is different because the reason the party could appeal there was because the appeal would have been from a patent board decision. And this court made clear that there are unique roles there that even prevailing parties, even if you don't have any ruling against you, which was the case there. But in that case, you had an entirely different forum, and collateral estoppel was found to preclude the claim. Here, you've got the same judge involving the same parties involving, as Judge Cowen indicated, a declaration that you went into court and asked the district court to make. And the district court made that declaration, and you didn't appeal it. So you were happy with that declaration. And now you're saying that you found some fact that came later, so there's no preclusive effect to that claim having been adjudicated. It seems to me that if that's the case, how could you ever have claim preclusion? Because there's always going to be some fact that will come up later. I see my red light is on. Please continue. I don't agree with the way that you frame your argument. I apologize if it wasn't clear. It's not that there's some fact that came up later that changed the prior ruling. It's that the prior ruling, the prior comments of the court in its opinion in order, were based on facts that did not exist at that time. And again, the case law is clear. This court's case law, the Supreme Court case law. But the district court has no power to opine on something that's not implicated by presently existing facts. Is that endemic, though, to a claim for declaratory relief? You're asking the court to declare rights prospective. But only based on the presently existing facts. And there are a huge number of cases where courts have denied and dismissed claims for declaratory relief. This court, the Supreme Court, have affirmed those rules or have said that they shouldn't have been dismissed because the presently existing facts did not implicate the issues that the parties sought to have declared. This was no different than any case where a plaintiff in a complaint seeks broad relief because it doesn't know what facts the court's going to find down the road. When the court does find those facts, that's what, as this court has said, frames the relief the district court can give. And so the relief that could be framed in this case could not include anything for either side regarding what would happen when a mutual fund said to rely or restrict these policyholders from trading. It could not have included that. It can now, because now they say we got these letters in 2007, after the other case was over, saying we need to restrict your trading. So it's in the second case that those facts are now implicated and the court can issue a declaratory judgment or an injunction or give damages. So it was not implicated at all in the first case. Any further questions? Thank you. We'll have you back on the final. Is it Mr. Moody? Yes, Your Honor. Good morning, Your Honors. If it pleases the court, my name is Joseph Moody. I'm here for a penalty for the law at Star Life Insurance Company. With your indulgence, I'd like to start with the appeal that Mr. Merenstein left off, which is the appeal from the determination by the district court that the claim in the second lawsuit was barred by race, judicata, collateral estoppel, and on the merits of the case. I think, Judge Hardiman, you identified one of the striking issues here. This is not a case where there was some dicta that was free-floating in an opinion. This is a case where the actual order that was merged into the judgment issued by the district court in the first case precisely addressed the issue that is raised in the second case. That order had language in it that allowed the law at Star to decline to process transfer requests that the prosecutors might make if it received instructions from the fund company. Now, it cannot be the case that any party receiving that order in judgment could not have been aggrieved. If they were not aggrieved, we wouldn't be here today fighting about this. Obviously, the restriction imposed by that injunction gave the plaintiffs cause to appeal. The second point I'd like to make is that it is not a correct statement of the record below in the first case to say that this issue was not joint. Go look at the complaint. What are the two prayers for relief in the two complaints, and how do they compare with respect to this? They overlap. In the first complaint, if you go to the prayer for relief, there are two elements that I believe the district court in its opinion noted bear on this issue. First, the complaint for relief in the first case asked for an instruction, an order, a specific performance that relies on would have to process transfer requests received by fax, etc. Specifically, it was to undertake reasonable efforts to surmount any future obstacles to performance of its obligations under the contracts. Indeed, and there is a second, there is a preceding prayer for relief that is even more specific, and it is open-ended. Well, adjunctive, declaratory, and specific, yeah. All right, we've all read the complaint. And when the plaintiffs moved the summary judgment, they, in accordance with the rules of the court, submitted a proposed form of order, which included both of those claims for relief. In issuing its order, what the district court did was take the beginning language of the instruction to process the trades, but added the limitation that those instructions, those requests, did not have to be honored if there was a fund instruction. To the contrary, and it eliminated the claim for relief that Your Honor just quoted about overcoming obstacles imposed by fund companies or others. And in fact, that issue was the very crux of plaintiff's argument in great degree. In, as Judge Dalzell noted in his opinion, in their brief, they specifically asked the court and argued to the court that even if the fund gave instructions not to transfer or honor transfer requests, that did not relieve Roloi Stark of its obligation. And indeed, that issue was framed in the complaint. The plaintiffs, in their complaint, went out of their way to quote language in the letter that was delivered by the Roloi Stark representative to them, in which it said not simply, we're not going to allow you to trade electronically. But they went out of their way to quote the sentence that said, and we will honor instructions from the fund companies that put limitations on your request. So right from the beginning of this case, both in the claim for relief, which was open-ended and broad, and from the facts they pled, this issue was in play. And when it was argued, Mr. Merenstein refers to the changed legal environment or changed regulatory environment, which was, as he tried to characterize it, the nub of the controversy. That's the district court's language. That's the district court's language as well. But what did that mean in the context of the evidence and the issues that were presented to the court? Well, one of the issues that the plaintiffs pressed was that if the Roloi Stark had entered into contracts with fund companies that allowed them to honor requests from the fund companies not to process trades, that didn't relieve Roloi Stark of its obligation. So that was one argument they made. The second argument they made was that even if fund companies issued such requests, Roloi Stark had an obligation to overcome those instructions, to do something else. Did they argue that to the effect that if the fund companies refused to do this, that Roloi Stark was required to financially pay damages consummate with the trades that would have been made? They argued several different alternatives. That was one alternative. Another was go out and find us funds and add them to the policy. Okay. So your position is pretty well documented, that you felt that it was the declaratory injunctive relief encompassed what is before the court at a time when you absolutely cannot make these trades when the funds refuse to do it. Absolutely. That's correct, Your Honor. And I think not to belittle the balance of the arguments, I do think that the same principles of collateral estoppel lead to the same result as the district court correctly. And frankly, if you look at the contract. Well, you're saying alternatively, even if we didn't have the injunction that the contract in itself, that's a, and certainly we didn't ask plaintiff to opine on that. Your position is that just a matter of contract construction would not require you to do what you claim is impossible to do. Correct. That's your third alternative. That's correct, Your Honor. Let me ask you, though, analytically, because I haven't resolved which is the appropriate avenue, certainly, to analyze this question. And I confess to having had great difficulties on numerous occasions in 18 years as a trial judge. Is this claim preclusion here or is it issue preclusion? Is it ratio to conduct? I think the correct way to look at that is it claim preclusion, because if it's claim preclusion, it can also be issue preclusion. But if it's issue preclusion, it doesn't necessarily have to be claim preclusion. I think it is correct that it is both. And the reason you can get to claim preclusion is because you can look at the issues that were framed and the relief that was granted. To get to issue preclusion, you can also go into the record and look at the evidence that was actually presented. And the evidence was presented about this very issue of the fund's threat to cut off and the response or the obligations Reliance Star would have to have in the face of that. So clearly it's not race judicata, because at the time of the original suit, the fact which was in dispute in the second suit, namely that the funds were prohibited from making them at that time. Judge Cowan has hit exactly on what's troubled me here in terms of trying to determine what hole this fits in, whether it's claim preclusion or whether it's issue preclusion. And I think that's where the Helmick Court's and Gregory's analysis of what race judicata really means comes in. It's the nub of the controversy. And the nub of the controversy, I think, as was articulated in the argument during Mr. Merenstein's argument, was the scope of Reliance Star's obligations. Given the fact that what precipitated the instructions were fund complaints, given the fact that there was a statement that if you took it in isolation, the statement by Reliance Star that they were not going to honor any transfer requests in the face of a fund instruction to the contrary, would certainly have been viewed as an anticipatory repudiation of that obligation. So I do think race judicata does apply. I think collateral estoppel applies even more forcefully. But in any event, I think on the merits of the claim itself, which I'd just like to spend one minute explaining one point about, we win as well. Which is the principle argument that the plaintiffs make on the breach is that the Searc memos somehow overcame any fund instructions to the contrary, any language that might be embedded in the policy form of the prospectus, both of which have quite identical language. That's just not the case. If you look at the literal language, it's quite clear that what was happening was Reliance Star was relieving itself or waiving any of its rights to impose restrictions. There's nothing in there that suggests they would be waiving restrictions on behalf of the funds. Well, if you're talking alternatively, looking at the two agreements separately, are we in the area of contract construction or contract interpretation? Because if we're in the question of interpretation, that's a jury question as to what the parties intended with the two agreements. And that would be something which a judge should not rule on. That's a question of fact. Unless, of course, the judge is. But if it's contract construction, of course, then that's the court's obligation to construe the contract if it's clear on its face. And your position there, as your brief, I think pretty spells out, is that effectuate means to do whatever is possible, but not to do something that the funds say that they will not do for you or that the law prohibits you from doing. Right. I think we're clearly in the contract construction. This is why. Because on the face of the two concepts, I've always alluded me quite frankly. Right. Well, I think contract interpretation is when you have to go beyond the four corners and understand from collateral evidence what the parties intent were. What we are arguing here is that you can look at the SIRC memos and the policy form and the prospectus and see that there is a distinction quite clearly made between when Reliostar is relieving or waiving its imposition of charges and limitations on the number of trades versus the recognition that the fund companies have an independent right over which Reliostar has no control. That's a strong point. And while I don't recall that either side in their briefs addressed the relationship in these terms, it occurs to me that Reliostar is acting here as an agent in a principal agent relationship. And aren't they an agent for the Pruskys and therefore bound through their agency by whatever terms the Pruskys impress upon that relationship as opposed to the other way around? In which case, Reliostar has no authority to do anything vis-a-vis the funds. The funds have determined the conditions under which they will act and they will change their policy and they will accept or effectuate a transfer or not do so. But all that Reliostar can do here is that which the Pruskys have requested them to do reasonably and within their power and no more. I think that's exactly right, Your Honor. And I think you can actually intuit that from the relief that the Pruskys actually seek. They don't seek net-a-sort and frankly, that's because they couldn't. No court would grant it. They couldn't seek an order commanding Reliostar to force a fund to accept a trade. It couldn't happen. Instead, what they say is, well, Reliostar has to find other avenues to either circumvent this or compensate us for those fund instructions. And I think Judge Dalziel got it exactly right. If you were going to make Reliostar an indemnitor, if you're going to require Reliostar to hold them harmless, you would have expected to see some pretty specific language in this contract that said what its obligations were going to be. Well, I can argue pretty effectively, and I think your friends, of course, you don't have that. Effectuate means, look, you're going to do it and don't tell me how you do it. Just do it. Effectuate it militarily. Effectuate this. We don't want to know how, why or how. Just do it. And we bargain for an effectuation of it and that means do it and we don't want to know how you do it. Just do it. And you've got paid some substantial money to do it. I think effectuate in that context means process the trade, send them on to the fund companies. But it doesn't say force the fund companies to honor those trades. The language is accept and effectuate, as I recall. Isn't it in the conjuncture? That's right. Accept them if they're in good form, that is not reject them, and then transfer them on to the fund companies. This all comes up in the context, remember, which is in the record, that the Pruskis were well aware that what was happening here was a two-step process. They had previously been direct investors in mutual funds, in the prudential funds, as a matter of fact, in which eventually the prudential fund limited them. So what they now were doing was using insurance policies that put in this intermediate step in the hope that with their trades bundled together with other trades, they would be rejected. But they understood all along the independent right and power of fund companies to reject those trades. Well, when we confer, we'll look up in the dictionary what effectuate means. Would you mind if we proceeded to the mitigation aspect? Absolutely, Your Honor. Assuming, for the purpose of argument only, we buy your position in your brief that a question of mitigation is finding a fact which we review for plain error and not de novo, your brief acknowledges that they have an obligation to mitigate, but you have the obligation to prove what that mitigation should be or shouldn't have been, right? Yes, Your Honor. That's your burden of proof. I have some, a slight problem with, well, there were three alternatives that were posited by your very able expert. The first two, the district court rejected, and I can understand thoroughly why. It was, the first two were positions that no, no, even casual investor would have ever thought would make sense, namely buy and hold anything for any period of time. Well, I'd hate to admit to you what some of my investment strategies have been. I was just about to say. Because it would explain very well their performance over the last few years. I'd be happy to take one half of one percent of your portfolio, Judge Brooks. I'd give you plenty of advice. There's a lot of competition. The third one is the one that the district court bought and based its calculation on. I have a problem with that in that it's acknowledged, and this is Hornbook, that a party who is the subject of a breach then has to make reasonable accommodations to mitigate. And that determination of what's reasonable is done based on the facts which that party confronts at the time of the breach. It doesn't involve what occurs later on because we determine whether it was reasonable based on what they do at the time of the breach. Necessarily, concomitant with that obligation, and the case is spelled out, this is not my bright idea, that the party who has been breached then makes its decision based on facts which confront it and are extant at the time of the breach. Your expert based his third alternative on facts which were not in existence at the time of the breach. He based it on a three-year view which he accumulated over a period of three years of what they actually did, but not on what was confronting them at the time of the breach. I have a lot of problems with that because it's totally contrary to contract law in mitigation of damages. If I may, I think I can explain the reasoning the district court used, and I think which is the correct reasoning. Well, did I spell out correctly what the district court did? He based it on facts which the expert accumulated over a three-year period following the breach. I don't think you are, Your Honor, and if I may explain. There are two steps to the mitigation analysis. The first was, was there a failure to mitigate? The second was, if there was a failure to mitigate, by what amount do we reduce the damages? Assume for the purpose of argument that there is an obligation to the courts to mitigate and there was not a failure. Not a failure. That they didn't mitigate, but you have to prove what the mitigation should be. Let me explain, Your Honor. What the models did, as Mr. Merenstein conceded, at least the first model was an available, plausible I think is the word he used. You could have done it, but the district court in deciding what damages to award said, that's not really a reasonable surrogate for the plaintiff's trading strategy. Let me get to the third. What Dr. Warner did in the third model was to say, I want to replicate the risk profile that the plaintiff's trading strategy actually pursued. And so what he said was, if you look at their risk tolerance, if you will, they basically were in mutual funds 44% of the time and they were in other funds 56% of the time. And in order to estimate what amount of loss they could have avoided, I'm going to actually look at the history and then I'm going to roll it out and model it across the three years. Can I just stop you for one second? That would have been okay if he would have looked at the history in the three years prior to the breach. He looked at the history of the three years following the breach. Those three years following the breach are not what the breach party has to do at the time of the breach. That's three years after. If I can defer that for a second. That's a crucial point. I think the district court might have erred. What is not true is that the plaintiffs on day one, assuming they had a duty to mitigate and assuming for purposes of this part of the argument, that they had to do something other than put the money in the money market. The question is, what could they have done? Could they have put 44% of their money into a mutual fund on day one and left it there? Yes, they could have done that because they put 100% of their money in mutual funds. Could they then have invested in other funds and moved their money around at different times, comparable to the way that as they ultimately went forward, they moved their money around through the desired trading strategy. That is, sometimes they were more active in large cap or mid cap funds. Sometimes they moved to equity funds. Could they have done that from day one? The answer to that is yes, they could have done that as well. In other words, they were in a position from day one to control where the money went. The fact that Dr. Warner then tried to estimate damages based on modeling that is a damage calculus. But it doesn't undercut the fact that they could have done exactly that trading strategy from day one. They may have pursued it a little differently. Maybe they would have put some more money here or less money there. Isn't that basic paradigm always what mitigation is about? It always involves an ex-post attempt to replicate something that the party with the duty to mitigate could have done. That's no different in this case than it is in any other because you're trying to create something artificial, but an artifice that is as close to what a legal duty imposed upon somebody to do, just inherent in mitigation. I do believe that's correct. I think there is an important distinction between whether this was available to them versus how are we going to adjust the damages based on their failure to mitigate? I want to ask you about that. The district court said that this third option closely approximates the risk profile of the desired trades and relies on information the Pruskies had at their disposal. Do you agree with that? I do. Then the district court found that that strategy outperformed the Prusky strategy by $912,000. Do you agree with that? Yes, I do. You agree then that the award was properly reduced by $912,000? I do, Your Honor. Akin to what Judge Cowen said, I want you to assume for me that this strategy, instead of outperforming the Prusky strategy by $912,000, let's say it underperformed the Prusky strategy by $5 million. You would agree that the Pruskies' award should be increased $5 million? I think under the law, the answer to that is yes. If that was a reasonable mitigation strategy, let's assume for the moment, there's no contest, they're doing the best they could, they lost money. And we can see this in the brief. The law says if you make reasonable efforts to mitigate, and yet you incur losses, yes, then we would be liable for that. All right. Well, I appreciate that answer. Then let me ask you the second issue that I think is challenging here, which is, is it fair to say that this is the same risk tolerance? Because it seemed to me that the record demonstrated that these folks were entirely risk-averse. In fact, the whole issue that seemed to be percolating in the case involved this market timing issue. And these folks found a way to, if you want to say it in a pejorative sense, you could say they found a way to game the system so that they eliminated all risk. And 30 years of an undefeated record, I think, seems to bear that out. So if they've gamed the system to eliminate all risk, then how can we say that by taking away the very vehicle, namely the market timing, which enabled them to eliminate all risk, how can we say that this third option was a suitable strategy, that there was risk equivalency? It seems to me to be totally different. You've got people that are entirely risk-averse. They found a way to legally game the system. They're undefeated. And when that one way is removed from them, the only other place they can go that meets their risk tolerance is in the money market. That's the ultra-conservative investment. Isn't that a prudent thing that they did? I don't think that's a correct understanding of the record. They may have been champions, but they certainly weren't undefeated. 30 years in a row, no losses? 30 years in a row, no losses overall. But as the record reflects, number one, Stephen Prusky admitted that this strategy had risk to it. It was not a fail-safe. And indeed, he conceded that it had more risk than simply putting it into a money market fund. He conceded that. Second, the evidence shows, and Mr. Prusky also conceded this, the strategy wasn't infallible. From time to time, they lost money. Day to day or week to week? There was a time, reflected in the record, for several months between May of 2006 and August of 2006, I think, in which the desired trades that they had submitted to ReliSTAR consistently lost a substantial amount of money. So it was not a foolproof system. So I think what Dr. Warther's analysis does, and I don't think it's been contested, frankly, in this appeal, that this profile, whether you agree it's the right way to measure damages, etc., but this profile, nobody, as I understand it, has contested that it wasn't a good surrogate for evaluating the risk profile of the Pruskys. So I do think that the model that was used, in fact, and stands unchallenged in the record, was a... I don't see how I can say that. There's no way that you could say that as a matter of law, unchallenged, certainly it's not unchallenged, that they're going to invest the same proportion of funds in CDs and in mutual funds in coming years that they had last year. It's just... The record does not... These are investors. They're going to go where they think they're going to make money. They're not going to replicate what they've done every year. Well, no, but what Dr. Walther did was compare what they actually wanted to do by looking at the proposed trades they had faxed in during this three-year period. And he said, okay, I'm looking at that, and this is the risk profile that those desired trades reflect. So I do think that's exactly what Dr. Walther did. And I don't think that there's been any challenge, that that is a surrogate or comparable to the risk that they wanted to do. Was there any evidence in the record, though, that they ever behaved in that way before? It seemed like there was a remarkably consistent pattern to their market timing trading. And that Dr. Walther's third option would be obliging them to do something that they had never done in the history of their trading. That's correct, Your Honor. I concede that for this argument. But that's what mitigation is about. When you have one avenue foreclosed, and I see my time is up, when you have an avenue foreclosed, you've got to seek out other alternatives that are available to you to mitigate. And that's what we suggest they could have done, and what we, based on the evidence that I think the district court carefully considered and adjudged, determined that would have permitted them to avoid a substantial amount of their losses. If there are any other questions, Your Honor, I'd be happy to entertain them. Thank you very much, Mr. Rudy. Thank you very much. Rebuttal, Mr. Maranzi. Thank you, Your Honor. I would like to just make three broad points. One is that I find it somewhat astounding that my friend Mr. Rudy says that the last point he made is not contested. It is heavily contested. I think it is a key issue in the damages appeal. The fact is that putting money into a particular mutual fund for three months or five months or six months is not the same thing as deciding every single day we want to be in the fund today, not tomorrow. Then the next day deciding we do want to be in it. They are not in any way the same thing for any investor, let alone for these investors where the record is undisputed. We appreciate that's contested. We understand that. There's no problem. The second point I'd like to make is with regard to the question of what relief the plaintiff sought in the two cases. And I would just reiterate one point that the plaintiff seeks. They can't expand the authority of the district court. The district court only has the authority to grant the relief that it has the power to grant. And so a plaintiff can ask for, as plaintiffs usually do, such other relief as the district court deems warranted. That doesn't open up the case to say that that case is now going to be raised to the caught and prevent that plaintiff from bringing any other later cases. In fact, though, if you look at on page 78 of the appendix, which I believe is in the second case, the relief, probably the first case, I'm sorry, the relief that the plaintiff sought was in dispute. They said you can't make trades by facsimile. You have to do it by mail. That was what the heart, the nub of the controversy was in the second case. And the relief we sought was an order saying that ReliStar would accept any facsimile transmissions. So that was what we sought in the first case. And again, no matter what other language there is in there, the district court can only grant such relief that it has the authority to grant. The other point I would make, which I didn't really get to, but I urge the court to look at the language of the cert memos on page 97A of the appendix in the second case. It does not say, as Mr. Moody said, that ReliStar will accept and effectuate transfers among the mutual funds, which is exactly what he said. It specifically says among the subaccounts. The subaccounts are entirely within ReliStar's control. ReliStar has an agreement with the plaintiffs in which it agreed that it would effectuate all transfers among subaccounts. The subaccounts all got wiped out when these mutual funds decided not to accept these types of trades. No, not at all, Your Honor. The mutual funds have a separate agreement with ReliStar. Now, they may enter into an agreement where ReliStar agrees to mutual funds that we won't send you money to invest in the mutual funds based on the trades that our policyholders make in the subaccount. But they're two separate relationships. Mr. Moody, again, relies on the fact that the plaintiffs can't tell the mutual funds what to do. They're not a party to this case. ReliStar is. We have an agreement with ReliStar, not the mutual funds, which means we can't tell the mutual funds what to do, but by the same token, the mutual funds cannot tell the plaintiffs what to do. They have an agreement with ReliStar, and if ReliStar has entered into agreements with the mutual funds, which they entered into after the ones they entered into with the plaintiffs, they have obligations to one contract party that they're in with, the mutual funds, and it conflicts with the contracts with the plaintiffs, that's a predicament of ReliStar's making. They can't rely on that and say, well, there's nothing we can do, the mutual funds made us do it. The mutual funds didn't make them do anything with regard to the plaintiffs. It may have made them do something with regard to ReliStar's obligations to the mutual funds, but that's a different thing. And in fact, in order to deal with that, we have to identify it against any costs that we may incur due to frequent trading because we have people investing through policies, through insurance companies, and they may have a contractual right to trade. It's in the record, so Mr. Rui makes it sound like it's outrageous that the ReliStar would ever agree to identify the plaintiffs for this. They've already done it. They've already said to the mutual funds, including their sister company, ING Funds, we won't identify you for any costs that you incur as a result of the mutual funds. So with no further questions, again, you know our position. Thank you very much. Thank you to both the Council for their thoughtful arguments in both of these matters, both of which constitute a saga of some kind. We thank you, and we'll take the matter under advisement.